### DUNNING *vs.* MERRILL and others.

A cash note which is usurious, being changed to a chattel note, does not purge the usury.

A suit commenced upon such chattel note, and afterwards compromised by giving farther time on the one hand, and additional security on the other, the same note still remaining, does not purge the usury.

An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint, if the descent can be fairly traced.

IN the fall of 1834, the defendant Merrill asked the complainant if he could let him have, by way of loan, $100. The complainant said he thought he might be able to do so, and could let him have it until the next spring or probably until the next fall, but should have to charge him at the rate of 14 per

cent. per annum for it. Merrill concluded to take the money. One or two months after this conversation, Dunning carried $100 to Merrill, and paid it to him, without taking any voucher therefor. Nov. 30, 1835, Dunning and Merrill came to a settlement. Dunning computed the amount due on a note he had purchased against Merrill, and also on the above $100—the latter at the rate of 14 per cent. interest, for the aggregate amount of which Merrill gave Dunning a note for $173 and a little over, payable 15 Sept. 1836. On the same day, by mutual arrangement between the parties, the cash note was given up, and Merrill executed a note in lieu thereof for 173 1-2 bushels wheat, deliverable at the warehouse of Roby & Goold, by the 15th day of September, 1836. This wheat not being delivered according to the terms of this contract, the complainant sometime afterwards prosecuted Merrill upon this note, at law. This suit was discontinued by an agreement between the parties, by which Merrill was to give security for the payment of the debt; and Dunning was to give Merrill longer time of payment. The note remained unaltered, and Merrill executed to the complainant an assignment of a land contract, as collateral security by way of mortgage, for its payment. The bill in this cause, is filed to foreclose this mortgage. The defendant Merrill in his answer sets up usury in the transaction. Proofs are taken, and the cause comes on to a hearing upon pleadings and proofs.

*H. R. Selden,* for complainant.

*A. Pratt,* for defendants.

THE VICE CHANCELLOR. The complainant has

*July, 1840.*

Dunning
v.
Merrill and
others.

July, 1840. presented several points arising out of the pleadings and proofs in this cause, which deserve consideration.

Dunning
v.
Merrill and others.

1st. He insists that there was no usurious agreement for the loan of the $100. In deciding upon this point, we must look at the whole transaction in relation to this loan, the payment of the money, and the note finally given; and we must look at it with the light of common sense and in a business point of view, to gather from it all what the *intent* of the parties was. In the first place, there was a conversation about a loan and the terms upon which it would be made. These terms were—as to time, payable the next spring or fall—as to terms, fourteen per cent. interest. Merrill agreed to take the money. He did not take it at the time. From one to two months afterwards he took the money, without giving any voucher therefor. It must be admitted that if Merrill, after this conversation, borrowed $100 of the complainant in the way he did take it, that it might have no reference to the previous conversation, and it might be considered as a temporary loan payable at the will of the lender, and therefore not affected by the corrupt understanding previously had between them. In other words, it might, under certain circumstances, not be deemed to be a loan under the previous arrangement.

We must look farther to see what the actual intent of the parties was, in lending and taking this money—bearing in mind all the time, that Merrill had agreed to take it upon the terms proposed by the complainant. We find that Merrill kept this money for a year; that at the expiration of the year, he came to a settlement with the complainant, and that on such settlement fourteen per cent. was computed

upon this amount; that the complainant afterwards
acknowledged that fourteen per cent. was computed
on this amount, and admitted that he was lame in
his note given for the payment thereof. All these
circumstances throw a light upon the transaction, to
which the court cannot shut their eyes; and seem,
taken together as a jury would consider them, to af-
ford conclusive evidence that the money was advan-
ced in pursuance of the usurious agreement.

2d. The complainant next contends that there was
no usurious interest actually included in the cash note.
He has gone into a calculation to show that the note
given Nov. 30, 1835, was less than the amount due
him with simple lawful interest. This calculation
is derived from the testimony, which is vague and
uncertain as to dates. If such was the fact, though
the intent was to commit usury, yet if it was not ac-
tually carried out by the taking of a note for usurious
interest, there can be no doubt but the note would
be good. But the elements of this calculation are
uncertain, and we have the admission of the com-
plainant after the note was given, that he did include
in the note fourteen per cent. interest on the $100.
This admission, under the state of the proofs, must
control. We cannot know how the state of the ac-
counts between the parties was precisely, at the time
of the settlement. The complainant did know and
admits that fourteen per cent. was included. This
is certain, direct, and to the point, and must govern
our decision.

2d. The complainant insists that if there was usury
in the transaction, it is not the usury set up in the
answer.

I shall discuss this point with the single remark

that, in my judgment, the proofs substantially sustain the answer.

4th. The complainant next insists that the chattel note or wheat note is not and cannot be usurious.

I am willing to admit that if, on the 30th Nov. 1835, and after the cash note was executed, the parties had mutually abandoned the usurious contract, and cancelled or destroyed the security, so that it could never afterwards be made the foundation of an action, and the defendant had given a new note for the money actually lent, but with lawful interest, that such new note would have been good. I am willing to admit, farther, that if after the destruction of such usurious security, the defendant had given a note payable in wheat at a future time, as a compensation for the amount actually due, that such note would have been good, as there would have been a moral consideration to sustain it, and the value of wheat at the time the note should mature, would have been contingent, and the parties ran a mutual risk as to its value.

But the testimony in this case shews no mutual abandonment of the usurious contract. On the contrary, it is quite apparent that the wheat note was given in continuation of the usurious contract, and in lieu of it. It was a mutual arrangement between the parties—whether at the suggestion of one party or the other, is immaterial—that the wheat note should be substituted for the cash note ; and both agreed that wheat should be deemed to be one dollar per bushel. This wheat note must therefore be considered a mere substitute for the cash note, and must be affected by every vice which affects the first.

5th. The complainant then insists that the com-

promise made after suit brought, forms a new and valid consideration, and renders the pledge of the article for the payment of the demand, valid and effectual.

It must be borne in mind, that upon this compromise or discontinuance of the suit at law, the old note was suffered to remain precisely as it formerly was. That note constituted the evidence of the debt. The pledge of the article was only secondary, or given as collateral security for its payment.

Now if that note which before the compromise was void, can be made good and valid by giving time for its payment and security for its payment, the note itself remaining unaltered and in precisely the same shape it was before the compromise, it contradicts all my notions of legal principles. The note before the compromise was tainted with usury. Can it be possible that by giving time and obtaining security, it can be purged of this taint? I had always supposed that a taint of this kind attached to the whole family of consecutive obligations and securities growing out of the same original vicious transaction; and that none of the descendants in the line of liabilities, however remote, could be deemed to be free from the original taint, if the family descent could be fairly traced. I shall so hold it in this case; and shall be compelled to determine that the note or wheat contract in this case is usurious and void, and that the complainant cannot recover upon it.

The complainant's bill is dismissed with costs to be taxed.